**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN GYLLENHAMMER and**
**DENISE GYLLENHAMMER,**

                              **Plaintiffs,**

**v.**                                                    **3:15-cv-1143 (BKS/DEP)**


**THE AMERICAN NATIONAL RED CROSS,**

                              **Defendant.**
_____

**Appearances:**

The Law Office of Alfred Paniccia, Jr.
Alfred Paniccia, Jr.
Centre Plaza
Suite 400
53 Chenango Street
Binghamton, NY 13901
_For Plaintiffs_

Webster Szanyi LLP
Michael P. McClaren
Jeremy A. Colby
424 Main Street
1400 Liberty Building
Buffalo, NY 14202
_For Defendant_

**Hon. Brenda K. Sannes, United States District Judge:**

                    **MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

          Presently before the Court are Plaintiff John Gyllenhammer ("Plaintiff") and Defendant

American National Red Cross's ("Defendant") pretrial motions and motions in limine.  These

motions follow the November 16, 2017 Memorandum-Decision and Order in which the Court,

*inter alia*, granted in part Defendant's motion to preclude evidence of injuries diagnosed by Dr. Thomas Van Gorder in the absence of reliable expert testimony causally linking those injuries to Plaintiff's fall.  (Dkt. No. 60).  Defendant now seeks: (1) preclusion of any evidence of Plaintiff's economic loss or inability to work (Dkt. No. 57); (2) preclusion of the supplemental expert report of Plaintiff's safety expert Ernest Gailor (Dkt. No. 65); and (3) preclusion of the expert testimony or reports of vocational rehabilitation expert Thomas Rick, safety expert Ernest Gailor, and economist Daniel McGowan (Dkt. No. 74).  Plaintiff's motions seeking preclusion of the testimony of Rebecca Nicosia (Dkt. No. 56) and for a ruling on the admissibility of the testimony of his vocational and economic experts (Dkt. No. 84) were denied at the final pretrial conference on January 16, 2018.[1]  Plaintiff's remaining motion seeks leave to supplement the testimony of Dr. Van Gorder (Dkt. No. 65).  The parties' motions are considered in turn below.

## II.     DISCUSSION

### A.     Applicable Discovery Rules

Parties must confer early in the case about individuals that may have discoverable information in support of the parties' claims or defenses, other than information used solely for impeachment.  *See* Fed. R. Civ. P. 26(a), (f).  Within 14 days of the parties' initial conference— the Rule 26(f) conference—a party must disclose the identity of these individuals and the subjects of the information they may have.  *See* Fed. R. Civ. P. 26(a)(1).  These initial

---

[1] The Court has reviewed Plaintiff's request to reconsider the January 16, 2018 ruling denying his motion to preclude the testimony of Rebecca Nicosia.  (Dkt. No. 90).  In general, a motion for reconsideration may only be granted upon one of three grounds: "an intervening change of controlling law, the availability of new evidence or the need to correct a clear error of law or prevent manifest injustice." *United States v. Zhu*, 41 F. Supp. 3d 341, 342 (S.D.N.Y. 2014) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *see also Shannon v. Verizon N.Y., Inc.*, 519 F. Supp. 2d 304, 307 (N.D.N.Y. 2007).  "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Plaintiff has not presented any facts not previously considered by the Court, and accordingly, his motion is denied.

disclosures must be supplemented "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Similarly, "[f]or an expert whose report must be disclosed . . . the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2). Prior to trial, the parties must also disclose the witnesses they expect to call or may call, other than witnesses to be called solely for impeachment. Fed. R. Civ. P. 26(a)(3)(A)(i).

A party's failure "to provide information or identify a witness as required by Rule 26(a) or (e)" may preclude the party from using "that information or witness . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The purpose of the rule is "to prevent the practice of 'sandbagging' an adversary with new evidence," *Johnson Elec. N. Am. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999), and "to alert an opposing party of the need to take discovery of the named witness," *Pal v. N.Y. Univ.*, No. 06-cv-5892, 2008 U.S. Dist. LEXIS 50902, at *10, 2008 WL 2627614, at *4 (S.D.N.Y. June 30, 2008). But witness preclusion is a "harsh remedy." *Engler v. MTD Prods., Inc.*, 304 F.R.D. 349, 355 (N.D.N.Y. 2015) (quoting *Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012)).

In considering a request for Rule 37(c)(1) sanctions, the Court must determine if the substantial justification or harmlessness exceptions apply. "Substantial justification means 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'" *Kunstler v. City of New York*, 242 F.R.D. 261, 264-65 (S.D.N.Y. 2007) (quoting *Am. Stock Exch., LLC v. Mopex, Inc.*,

215 F.R.D. 87, 93 (S.D.N.Y. 2002)).  Harmlessness means "there is no prejudice to the party

entitled to the disclosure."  *Gary Price Studios, Inc. v. Randolph Rose Collection, Inc.*, No. 03-

cv-969, 2006 U.S. Dist. LEXIS 2381817, at *2, 2006 WL 2381817, at *2 (S.D.N.Y. Aug. 16,

2006).  However, "[i]n addition to or instead of [preclusion of undisclosed information under

Rule 37(c)(1)], the court on motion and after giving an opportunity to be heard . . . may impose

other appropriate sanctions including any of the orders listed in Rule 37(b)(2)(A)(i)–(iv)."  Fed.

R. Civ. P. 37(c)(1).  These other appropriate sanctions include "prohibiting the disobedient party

from . . . introducing designated matters in evidence."  Fed. R. Civ. P. 37(b)(2)(A)(i); *see also*

Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment ("Preclusion of evidence is

not an effective incentive to compel disclosure of information that, being supportive of the

position of the opposing party, might advantageously be concealed by the disclosing party.

However, the rule provides the court with a wide range of other sanctions—such as . . .

preventing contradictory evidence . . . .").

        In this case, the Court is not inclined to grant a continuance because the discovery

deadline expired on December 15, 2016, over a year ago; the trial date has been set since August

1, 2017; and the Defendant opposes a continuance.  A continuance at this late date, one week

before trial is to begin, would disrupt the schedules of the Court, trial counsel, and witnesses who

have been subpoenaed to trial.

    **B.    Defendant's Motions**

        **1.    Evidence of Economic Loss (Dkt. No. 57)**

        Plaintiff, who claims that the injuries at issue in this case have left him unable to work in

more than a diminished, part-time capacity, earning approximately $9.25 an hour, began full-

time employment at Weis Markets in February 2017, earning $20 an hour.  (Dkt. No. 59-3, at 3;

Dkt. No. 74-1, ¶ 12).  Plaintiff's counsel first informed Defendant of this development on

September 1, 2017.  (Dkt. No. 57-8, at 2).  Defense counsel then made written and oral requests

to Plaintiff's counsel in September and October, seeking updated discovery responses regarding

this employment as well as updated expert disclosures from Plaintiff's economist and vocational

rehabilitation expert.  Plaintiff's counsel, however, did not respond to these requests.  (Dkt. No.

57-1).  Indeed, Plaintiff did not provide any employment information until November 15, 2017—

*after* Defendant moved for sanctions based on his failure to update his discovery responses

regarding employment.  (Dkt. No. 59).  At that time, Plaintiff disclosed the Weis Markets

Benefits Guild, Associate handbook, and his paystubs from February 2017 through October

2017.  (Dkt. No. 59-1, at 2).  Defendant notes that Plaintiff's wage and economic loss claims are

based upon his experts' opinions regarding, *inter alia*, his work restrictions and his "market

value" of $9.25 an hour.  (Dkt. No. 57-8).  Plaintiff has not provided any updated disclosures

regarding his economist or vocational rehabilitation expert.

Defendant argues that Plaintiff's failure to update his discovery responses warrants

preclusion of any offer of evidence at trial as to his "alleged economic loss or inability to fully

participate in gainful employment."  (Dkt. No. 57-8).  In response, Plaintiff argues that: (i) his

November 15, 2017 disclosure was timely; and (ii) because his initial disclosures were

"comprehensive" and not "incomplete or incorrect in some material respect," Rule 26(e)

imposed no duty to supplement his prior discovery responses and disclosures.  (Dkt. No. 59, at

3).  At the January 16, 2018 pretrial conference, Plaintiff's counsel acknowledged that he

ignored Defendant's repeated requests for information in September 2017 and October 2017

regarding Plaintiff's current employment.  Further, counsel provided no explanation for failing to

apprise Defendant of Plaintiff's employment until November 2017, despite knowing about it since February 2017.

As explained above, before determining whether preclusion is appropriate, the Court must first determine whether Plaintiff's failure to make a timely update of his discovery responses and expert disclosures was substantially justified or harmless. *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). The only justification Plaintiff's counsel has provided for failing to disclose the information is that he believed he had no obligation to supplement his earlier disclosures because they were not "incomplete or incorrect" but were "comprehensive" at the time they were filed. (Dkt. No. 59-3, at 3). A plain reading of Rule 26, however, indicates that the comprehensiveness or accuracy of a disclosure *at the time it was disclosed* is irrelevant: a party "must supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response <u>is</u> incomplete or incorrect." Fed. R. Civ. P. 26(e) (emphasis added); *see also Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 79 (W.D.N.Y. 2011) ("Rule 26(e) imposes a continuing obligation upon a responding party to supplement prior discovery responses based on later acquired information when the party learns of its existence and materiality."); *see also* Fed. R. Civ. P. 26(e)(2). Furthermore, Plaintiff's counsel's purposeful delay in updating Plaintiff's discovery responses prevented Defendant from conducting discovery before trial as to Plaintiff's current job at Weis Markets, including details of the job's physical demands and earning potential. (Dkt. No. 89). Such a delay is obviously prejudicial in a personal injury case, where Plaintiff's potential recovery hinges primarily on the extent of Plaintiff's injuries, disability, and likely future income. *See Lujan v. Cabana Mgmt.*, 284 F.R.D. 50, 75 (E.D.N.Y. 2012) (explaining that a party's failure to disclose "was not harmless, as defendants' omission deprived plaintiffs of the opportunity to take depositions and

receive document discovery" related to the undisclosed declarants). Similarly, Plaintiff's failure to provide updated expert disclosures consistent with this new employment information has prejudiced the Defendant's ability to defend against Plaintiff's damages claims. The Court therefore concludes that Plaintiff's nine-month delay in disclosing relevant employment information was not substantially justified and was not harmless.

At the final pretrial conference, the Court proposed that the Defendant attempt to depose Plaintiff's current employer before trial to obtain employment information. Defense counsel explored the option of deposing the out-of-state employer, but determined that it was not a feasible option at this late date. (Dkt. No. 89). Defendant seeks to preclude any evidence of Plaintiff's economic loss after the beginning of Plaintiff's February 2017 employment. (Dkt. No. 89).[2] Having found that Plaintiff's failure to update his discovery responses was neither substantially justified nor harmless, and having considering the oral and written arguments of all counsel regarding a sanction of prohibiting the introduction of evidence of Plaintiff's future economic loss, the Court finds that prohibiting the introduction of evidence of Plaintiff's alleged economic loss beyond the date he began working as a full-time employee at Weis Markets is warranted. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298 (2d Cir. 2006).

## 2.     December 21, 2017 Expert Report of Ernest Gailor (Dkt. No. 65)

Defendant moves to preclude the December 21, 2017 expert report of Ernest Gailor, primarily on the basis that it amounts to an untimely rebuttal report, contains new opinions, cites to new authorities, and is not a "supplement" of the sort contemplated by Rule 26(e). (Dkt. No. 65-6, at 4–8, 9–13). In response, Plaintiff argues that the new report: (i) "includes no new opinions and no supplemental opinions"; (ii) "merely compiles Gailor's opinions and the bases

---

[2] The Court notes that Defendant has not moved to preclude the undisclosed evidence, that is, evidence of Plaintiff's employment, as such preclusion would only cause further prejudice to Defendant.

and reasons for them"; and (iii) contains only new "citations to [Occupational Safety and Health Administration ('OSHA')] and New York State rules, as well as other industry standards." (Dkt. No. 85, ¶ 4). Plaintiff has opposed Defendant's motion with an affidavit by Plaintiff's counsel that fails to cite to any legal authority. The Court agrees with Defendant.

Rule 26(a)(2)(B)(i) of the Federal Rules of Civil procedure requires that a written expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." At the time an expert issues a report, "[i]t should be assumed . . . that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought." *Sandata Techs., Inc. v. Infocrossing, Inc.*, 2007 U.S. Dist. LEXIS 85176, at *11, 2007 WL 4157163, at *4 (S.D.N.Y. Nov. 16, 2007). An expert witness has a duty to supplement his or her report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). This duty to supplement "extends to both information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2). However, a party's obligation to supplement an "initial expert report does not arise when a plaintiff seeks to bolster its earlier submission but, rather, arises only if the expert subsequently learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete." *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 12-CV-220 (WWE), 2014 U.S. Dist. LEXIS 52957, at *5, 2014 WL 1572746, at *2 (D. Conn. Apr. 16, 2014) (quoting *Sandata Techs.*, 2007 U.S. Dist. LEXIS 85176, at *4). Expert rebuttal evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party" must be disclosed "within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii). Here, the Uniform Pretrial Scheduling Order mandated that expert

reports and rebuttals be filed by August 22, 2016 and October 19, 2016, respectively.  (Dkt. No. 13).

Defendant seeks to preclude all opinions not contained in Gailor's original report and all authority not raised in the report.  (Dkt. No. 65-1).  Plaintiff argues, on the one hand, that the December 2017 report "merely compiles Gailor's opinions and the bases and reasons for them, as articulated" in his original report, his affidavit in support of the Plaintiff's motion for summary judgment, and his deposition.  (Dkt. No. 85, at 1–2).  But, at the same time, Plaintiff concedes that the December 2017 report contains new citations to OSHA and New York State rules.  (*Id.* at 2).  In fact, while Gailor's original report cites to one American National Standards Institute ("ANSI") standard and one section from the New York Codes, Rules and Regulations ("NYCRR"), Gailor's December 2017 report contains approximately five pages of "relevant standards," with multiple cites to the Code of Federal Regulations, the NYCRR, and OSHA regulations.  (Dkt. No. 65-5, at 4–9).  Defendant notes that Gailor was unable to identify applicable OSHA regulations or standards when questioned during his deposition.  (Dkt. No. 65-4, at 8–12).  Plaintiff's argument that Defendant would not be prejudiced by the new report because the new standards "are those with which defendant's expert should be familiar," (*id.* at 3), is entirely without merit.

The December 2017 report lists these new standards and regulations in support of the following four "conclusions," three of which were not identified in Gailor's original report, and which Defendant argues are new opinions: "do not overreach," "face the ladder at all times," "stepladders should be in the open position, with spreaders fully extended," and "things other than scaffolding complying with OSHA or state requirements are not to be used in place of or to

supplement a ladder or scaffolding."[3]  (Dkt. No. 65-5).  While Gailor responded to questioning during his deposition regarding the center of gravity on a ladder, the use of furniture in place of a ladder, and whether a person must face a ladder, he was unable to provide any support for his opinions on these topics.  (*See* Dkt. No. 65-4, at 4–15).  Plaintiff has failed to address Defendant's argument for exclusion of these "conclusions."[4]  Furthermore, Plaintiff primarily argues that the portion of the December 2017 report describing seven "options" and the safety issues with each should be admissible because each was "addressed in Gailor's original report and/or his earlier sworn statements."  (Dkt. No. 85, ¶ 13).  That issue has not been fully briefed. The Court, however, notes that Gailor's original report did not discuss these seven options.

Thus, having carefully reviewed each of Gailor's expert reports, the Court concludes that the "supplemental" report contains new opinions and is a rebuttal to Defendant's expert report. Mr. Gailor's initial expert report is three and a half pages long and cites two authorities in support of his opinions that: (i) use of the ladder in the closed position was improper; (ii) use of the ladder in the open position was not possible; and (iii) safety devices exist that would have allowed Plaintiff to perform the work in a safe manner.  (Dkt. No. 65-3).  In contrast, Gailor's December 21, 2017 expert report is approximately ten pages long, cites to more than thirty authorities,[5] and contains seven "findings" that constitute a point-by-point rebuttal of the "seven options that were allegedly available" to Plaintiff, as presented by Defendant.  (Dkt. No. 65-5).

---

[3] The Court notes that Gailor's initial report cites two authorities, ANSI A14.5 and 12 NYCRR 23-1.21(e), in support of the proposition that a stepladder in use should be fully opened with spreaders locked.

[4] Plaintiff has not cited any authority in support of his assertion that Gailor may testify to opinions from his deposition that were not stated in his initial expert report.  Courts have found that a deficient expert report may not be cured "by supplementing [it] with later deposition testimony" and "[a]n opinion that comes for the first time at the expert deposition is untimely."  *Baker v. Anschutz Expl. Corp.*, 68 F. Supp. 3d 368, 382 (W.D.N.Y. 2014) (quoting *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008)).

[5] Defendant notes that "much of the authority post-dates the alleged incident and should be precluded for that reason as well."  (Dkt. No. 65-1, ¶ 22).  Plaintiff has failed to respond to this argument.

Gailor's December 2017 report does not correct previously misstated facts or disclose newly discovered evidence that rendered Gailor's opinion inaccurate—rather, it attempts to bolster Gailor's initial expert report. Rule 26(e) "does not grant a license to supplement a previously filed expert report because a party wants to, but instead imposes an obligation to supplement the report when a party discovers the information it has disclosed is incomplete or incorrect." *Coles v. Perry*, 217 F.R.D. 1, 3 (D.D.C. 2003). Rule 26(e) therefore provides no authority for filing the report after the deadline for the exchange of expert reports or rebuttals as provided for by Rule 26(a)(2)(D)(ii).

Finally, Plaintiff has provided no explanation for the delay in submitting Gailor's second expert report more than a year after the expert rebuttal deadline. There were no facts unavailable to Gailor at the time of his first report and deposition that prevented him from forming and disclosing these opinions months earlier. The Court does not find Plaintiff's failure to comply with the discovery rules to be substantially justified. And, as noted above, trial is set for January 29, 2018—permitting Gailor to rely on these new opinions and authorities would cause significant prejudice to Defendant at trial, as there is insufficient time for Gailor to be deposed again. Although "preclusion is a drastic remedy," it is "generally ordered where the court finds that the party's failure to comply with the requirements was both unjustified and prejudicial." *Virgin Enters. v. Am. Longevity*, No. 99 Civ. 9854 (CSH), 2001 U.S. Dist. LEXIS 2048, at *6, 2001 WL 34314729, at *2 (S.D.N.Y. Feb. 28, 2001). Accordingly, pursuant to Rule 37(c)(1), Plaintiff is precluded from relying on the new opinions and new authority in Gailor's December 21, 2017 report.

### 3.     Testimony of Rick, Gailor, and McGowan (Dkt. No. 74)

#### a)     Thomas Rick

Defendant moves to preclude the testimony of vocational rehabilitation expert Thomas

Rick on the basis that it is unreliable under Rule 702 of the Federal Rules of Evidence and

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).  (Dkt. No. 74).  Defendant

argues that Rick's opinions "are based on no stated methodology, incomplete or selectively

chosen facts, and assumptions based on Dr. Van Gorder's precluded causation opinion."  (*Id.* at

11).  Plaintiff responds that Rick's testimony is not unreliable, as Rick reviewed Plaintiff's file,

interviewed Plaintiff, performed tests, and relied on a range of authorities and research in

reaching his opinion.  (Dkt. No. 86).

The Court is charged with a "gatekeeping" obligation with respect to expert testimony

under Rule 702 of the Federal Rules of Evidence: the trial judge must ensure "that an expert's

testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if: (a) the expert's scientific, technical, or
> other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the
> testimony is based on sufficient facts or data; (c) the testimony is
> the product of reliable principles and methods; and (d) the expert
> has reliably applied the principles and methods to the facts of the
> case.

Fed. R. Evid. 702.  "To determine whether a witness qualifies as an expert, courts

compare the area in which the witness has superior knowledge, education, experience, or skill

with the subject matter of the proffered testimony."  *United States v. Tin Yat Chin*, 371 F.3d 31,

40 (2d Cir. 2004).  "Under *Daubert*, factors relevant to determining reliability include the

theory's testability, the extent to which it has been subjected to peer review and publication, the extent to which a technique is subject to standards controlling the technique's operation, the known or potential rate of error, and the degree of acceptance within the relevant scientific community." *Restivo v. Hessemann*, 846 F.3d 547, 575–76 (2d Cir. 2017) (internal quotation marks omitted).  The reliability inquiry is "a flexible one," *Daubert*, 509 U.S. at 594, and the factors to be considered "depend[ ] upon the particular circumstances of the particular case at issue." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).

Although "[v]ocational rehabilitation is a social science that does not exactly mirror the fundamental precepts of the so-called harder sciences, . . . a vocational rehabilitationist assessing [an individual's] disability determination would want to test the underlying hypotheses and review the standards controlling the technique's operation in an attempt to reproduce the results originally generated." *Elcock v. Kmart Corp.*, 233 F.3d 734, 747 (3d Cir. 2000).  Vocational rehabilitation experts "who rely solely on experience must explain how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinions offered by the expert, and how that experience is reliably applied to the facts." *Powell v. Anheuser-Busch Inc.*, No. CV 09-729-JFW (VBKX), 2012 WL 12953439, at *6 (C.D. Cal. Sept. 24, 2012).

Defendant argues that Rick had "no methodology or rationale" for not factoring Plaintiff's back pain into his analysis.  The Court agrees.  After careful review of Rick's expert report, notes, and deposition testimony, it is apparent that Rick failed to consider the effect of Plaintiff's back injury—which is not alleged to have been caused by Plaintiff's fall—instead attributing all of Plaintiff's vocational limitations to his knee and shoulder injuries only.  (Dkt. No. 74-3, at 47–49).  For example, during Rick's evaluation of Plaintiff, Plaintiff repeatedly rated his back pain as much more severe than his knee and shoulder injuries.  (Dkt. No. 74-4, at

36, 53, 57).  Rick's expert report, however, attributes a five-year reduction in Plaintiff's

"worklife expectancy" to "medical impairments in both his upper and lower extremities" only.

(Dkt. No. 74-2, at 13).  At Rick's deposition, he stated that he did not know "if [Plaintiff's] lower

back is an issue in this particular matter or not . . . so [he] kind of disregard[ed] it."  (Dkt. No.

74-3, at 47–49).  Rick explained that Plaintiff's prior back injury "wasn't part of [his] analysis

because [he] didn't know if the back issue was related to [Plaintiff's] accident."  (*Id.* at 130).

Thus, Rick's opinions regarding Plaintiff's worklife expectancy as currently stated fail to

adequately distinguish between Plaintiff's injuries sustained before (back) and after (knee and

shoulder) the accident.

Furthermore, the reliability of Rick's opinion is undercut by the fact that several of his

findings are either unsupported by the factual record or have no methodological basis for their

predictions.  Rick's finding that Plaintiff is restricted to "part-time work in self-employment" and

that his "market value in the open job market is approximately $9.25 per hour," (Dkt. No. 74-2,

at 13), is inaccurate; Plaintiff is currently employed full-time earning $20 per hour.  Rick

assumes that Plaintiff's knee and shoulder injuries were caused by the accident—an opinion put

forth by Dr. Van Gorder that has been precluded.  Also, citing no medically supportable basis for

his opinion, Rick concludes that Plaintiff's "future reduction of his worklife expectancy is

expected to be in the range of 25%, i.e. five years."  (*Id.*).  Nothing in the record indicates that

this opinion, were Rick allowed to testify to it at trial, is reliable.  *See Hartness v. Union Pac.*

*R.R. Co.*, No. 07-CV-00269, 2008 U.S. Dist. LEXIS 106319, at *7–10, 2008 WL 5429638, at *3

(E.D. Ark. July 28, 2008) (precluding vocational expert's opinion that the plaintiff's retirement

age was reduced to 62 "[i]n the absence of some medically supportable basis for his prediction").

On this record, the Court cannot find that Rick's testimony meets the reliability standards in Fed.

14

R. Evid. 702 and *Daubert*, and the Court must therefore grant Defendant's motion to preclude that testimony.

### b)      Ernest Gailor and Dr. Daniel McGowan

As discussed *supra*, Plaintiff is precluded from relying on new opinions and new authority in the December 21, 2017 expert report submitted by Ernest Gailor.  With respect to the remainder of Defendant's motion to preclude Gailor's testimony, the Court finds that Defendant's arguments regarding Gailor's conclusions go to the weight, rather than the admissibility, of the testimony.  *See Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002) ("Where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may go to the weight, not the admissibility of the expert's testimony." (internal quotation marks omitted)); *Cohalan v. Genie Indus.*, 10 Civ. 2415 (JMF), 2013 U.S. Dist. LEXIS 28532, at *9, 2013 WL 829150, at *3 (S.D.N.Y. Mar. 1, 2013) ("The focus of a court's reliability inquiry 'must be solely on principles and methodology, not on the conclusions they generate.'" (quoting *Daubert*, 509 U.S. at 595)).  Accordingly, Defendant's motion to preclude that testimony is denied.

The opinions of Plaintiff's economic expert, Daniel A. McGowan, suffer from the same reliability flaws as those of Rick.  Like Rick, McGowan's opinion is founded upon findings that are either unsupported by the factual record or have no methodological basis for their predictions; McGowan's calculations are based heavily upon Plaintiff's anticipated "reduction in worklife expectancy" and assumed market value of $9.25 an hour.  (Dkt. No. 57-6).  On this record, the Court cannot find that McGowan's testimony meets the reliability standards of Rule 702 and *Daubert*, and the Court must therefore grant Defendant's motion to preclude that testimony.  Moreover, as set forth above, Plaintiff is precluded from presenting evidence

regarding Plaintiff's economic losses beyond the date he began full-time employment in February 2017.

### C.    Plaintiff's Motions

#### 1.    Leave to Supplement Testimony of Dr. Van Gorder (Dkt. No. 61)

Plaintiff seeks leave to take additional deposition testimony of Plaintiff's treating physician, Dr. Thomas Van Gorder, in an effort to obtain expert testimony on the issue of the causation of Plaintiff's knee and shoulder injuries, (*see* Dkt. No. 61), in response to the Court's previous orders precluding: (i) Dr. Van Gorder's opinion as to the cause of Plaintiff's knee and shoulder injuries, (Dkt. No. 47); and (ii) any evidence of the injuries Dr. Van Gorder diagnosed in the absence of suitable expert testimony causally linking those injuries with Plaintiff's fall, (Dkt. No. 60).  Defendant objects, arguing that a party who loses a *Daubert* challenge is not entitled to a chance to try to get more evidence, and that Defendant would experience substantial prejudice in the expense and delay of having to "redepose Dr. Van Gorder, renew another *Daubert* challenge, revise and reissue expert reports and essentially repeat expert discovery." (Dkt. No. 62-3, at 10).  For the reasons set forth below, Plaintiff's motion is denied.

When a party loses a *Daubert* motion, a court need not afford them a second opportunity to bolster their expert's testimony.  *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001) ("Fairness does not require that a plaintiff, whose expert witness testimony has been found inadmissible under *Daubert*, be afforded a second chance to marshal other expert opinions and shore up his case . . . .").  "When a party loses at trial . . . it does not get to do it again.  It does not get a chance to come up with more evidence or try to make a more persuasive presentation . . . .  That is not the way our system of justice works.  The party's recourse is to appeal, and only if it prevails on appeal will it get another chance.  A *Daubert* motion is no

different." *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 386 (S.D.N.Y. 2003). Furthermore, the Supreme Court has explained that "[s]ince *Daubert* . . . parties relying on expert evidence have had notice of the exacting standards of reliability such evidence must meet. It is implausible to suggest, post-*Daubert*, that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) (upholding Eighth Circuit's grant of judgment as a matter of law where it found plaintiff's expert testimony inadmissible because, although plaintiff "was on notice every step of the way that [defendant] was challenging his experts, he made no attempt to add or substitute other evidence").

The Court recognizes that there are cases in which courts have exercised discretion to permit a party to obtain a new expert following a successful *Daubert* challenge. *See*, *e.g.*, *Brown v. China Integrated Energy, Inc.,* No. CV 11-02559 BRO (PLAx), 2014 U.S. Dist. LEXIS 194203, at *13–14, 2014 WL 12577131, at *4–5 (Nov. 21, 2014) (granting plaintiff time to obtain a new expert after a successful *Daubert* challenge when the time to disclose experts had not yet expired). In this case, the exercise of such discretion to allow Plaintiff to attempt to adduce admissible expert opinion from Dr. Van Gorder is not warranted. Plaintiff has been on notice of Defendant's challenge to the reliability of Dr. Van Gorder's causation testimony since December 2016, and to its deficiency since July 13, 2017, when the Court issued its ruling. The discovery deadline expired on December 15, 2016, and trial has been set since August 1, 2017. Since that time, Plaintiff made no effort to supplement Dr. Van Gorder's testimony. And Plaintiff has made no showing regarding what Dr. Van Gorder, even if given the opportunity to supplement his deposition testimony, would say.

Plaintiff argues that he "should be allowed a full and fair opportunity to allow Dr. Van Gorder to address causation." (Dkt. No. 61-3, at 9). Plaintiff has not, however, explained how he was deprived of that opportunity in this case; the parties conducted extensive discovery, including the exchange of documentary evidence and expert reports and the deposition of fact and expert witnesses. To prevail on his New York Labor Law claims, Plaintiff must prove that the labor law violation was the proximate cause of the injury sustained. *See Gould v. E.E. Austin & Son, Inc.*, 114 A.D. 3d 1208, 1208 (4th Dep't 2014). In his disclosure regarding the facts and opinions to which Dr. Van Gorder would testify "under Federal Rules of Evidence 702, 703 or 705," Plaintiff included "Cause of the condition(s) for which the plaintiff was treated: The Fall of June 27, 2012." (Dkt. No. 51-2, at 2–3). Thus, early in this case, Plaintiff was aware of his obligation to provide evidence under Rule 702 proving causation, but he failed to do so.

While Plaintiff claims that any prejudice to Defendant could be cured with a continuance, for the reasons set forth above, the Court does not find a continuance to be a reasonable option in this case. The Court recognizes the importance of expert causation opinion to Plaintiff's case. However, the unfortunate impact of the rulings regarding Dr. Van Gorder on Plaintiff's case is not a basis for relaxation of the Federal Rules. *Lippe*, 249 F. Supp. 2d at 387.

## III.    CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that Defendant's motion to preclude and for sanctions (Dkt. No. 57) is **GRANTED** to the extent that evidence of the Plaintiff's economic loss beyond the date he began full-time employment in February of 2017 is precluded, and is otherwise **DENIED**; and it is further

**ORDERED** that Defendant's motion in limine seeking to preclude the December 2017 expert report of Ernest Gailor (Dkt. No. 65) is **GRANTED**, and the opinions and authorities not raised in the initial report are precluded; and it is further

**ORDERED** that Defendant's motion to preclude the testimony of Thomas Rick, Ernest Gailor, and Dr. Daniel McGowan (Dkt. No. 74) is **GRANTED** in part and **DENIED** in part as set forth in this decision; and it is further

**ORDERED** that Plaintiff's motion for leave to supplement the testimony of Dr. Thomas Van Gorder (Dkt. No. 61) is **DENIED**; and it is further

**ORDERED** that Plaintiff's request for reconsideration (Dkt. No. 90) of the January 16, 2018 ruling denying his motion in limine to preclude the testimony of Rebecca Nicosia (Dkt. No. 56) is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 23, 2018
      Syracuse, New York

Brenda K. Sannes
U.S. District Judge