# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JOHN GYLLENHAMMER and DENISE GYLLENHAMMER,

                Plaintiffs,

3:15-cv-01143 (BKS/DEP)

v.

THE AMERICAN NATIONAL RED CROSS,

                Defendant.

**Appearances:**

*For Plaintiffs:*
Alfred Paniccia, Jr.
The Law Office of Alfred Paniccia, Jr.
Centre Plaza
Suite 400
53 Chenango Street
Binghamton, NY 13901

*For Defendant:*
Michael P. McClaren
Webster Szanyi LLP
Jeremy A. Colby
424 Main Street
1400 Liberty Building
Buffalo, NY 14202

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs John Gyllenhammer and Denise Gyllenhammer commenced this action asserting claims under New York Labor Law §§ 240(1) and 241(6) in connection with injuries John Gyllenhammer allegedly sustained while attempting to relocate a thermostat in Defendant's office building in Endicott, New York, on June 27, 2012. (Dkt. No. 2). The case proceeded to a

jury trial that lasted from April 16, 2018 to April 19, 2018, (Text Minute Entries of April 16–19, 2018), and the jury returned a verdict finding that Plaintiffs failed to prove their claims by a preponderance of the evidence. (Dkt. No. 118). Currently before the Court is Plaintiffs' motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a). (Dkt. No. 125). Defendant opposes the motion. (Dkt. No. 127). For the reasons that follow, Plaintiffs' motion is denied.

## II. BACKGROUND

As stated in the Court's July 13, 2017 and November 16, 2017 decisions, Plaintiffs alleged that, while using a six-foot stepladder that was in the closed position, John Gyllenhammer fell while attempting to remove and relocate a thermostat on a wall behind a hutch attached to a desk. (Dkt. Nos. 47, 60). The evidence presented on summary judgment raised several issues of material fact, including: (i) whether Defendant provided adequate safety equipment for Mr. Gyllenhammer to relocate the thermostat at issue; (ii) whether Mr. Gyllenhammer's own conduct was the sole proximate cause of his fall; and (iii) whether Mr. Gyllenhammer's alleged injuries were proximately caused by Defendant's violations of New York Labor Law, if any. (Dkt. Nos. 47, 60).

At trial, Plaintiffs testified and called as witnesses: (i) Christopher Holleran, Vice President of Auchinachie Plumbing;[1] (ii) Daniel Spencer, Jr., architectural designer; and (iii) Ernest Gailor, workplace safety expert. Plaintiffs also read into the record portions of the deposition testimony of Micah Champoux, another Auchinachie Plumbing employee present at Defendant's building on the day of Mr. Gyllenhammer's fall. Defendant called as witnesses: (i) Rebecca Snow-Nicosia, a Red Cross employee; and (ii) John Coniglio, workplace safety expert. Defendants also read into the record portions of Mr. Champoux's deposition testimony.

---

[1] Auchinachie Plumbing was Plaintiff's employer at the time of the incident at issue.

The jury returned a verdict finding that Plaintiffs failed to prove by a preponderance of the evidence (i) that Defendant failed to provide Mr. Gyllenhammer with adequate safety equipment for the performance of his work in violation of New York Labor Law § 240(1) and (ii) that Defendant violated New York Labor Law § 241(6). (Dkt. No. 118). Plaintiffs now seek a new trial under Federal Rule of Civil Procedure 59(a) on the basis that "the jury's finding that [P]laintiff John Gyllenhammer had available to him an adequate safety device to perform his work was against the weight of the evidence." (Dkt. No. 125-2, at 2).

### III. STANDARD OF REVIEW

Under Rule 59(a), a court may "grant a new trial . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court," Fed. R. Civ. P. 59(a)(1)(A), "including if the verdict is against the weight of the evidence." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012). The Second Circuit has explained that "a decision is against the weight of the evidence . . . if and only if the verdict is [1] seriously erroneous or [2] a miscarriage of justice." *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002). On a Rule 59 motion for a new trial, the court "is free to weigh the evidence . . . and need not view it in the light most favorable to the verdict winner." *DLC Mgt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998). "A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is 'egregious.'" *Id.* (citation omitted). Although a court "may weigh the evidence and the credibility of witnesses" when considering a Rule 59 motion, "a judge should rarely disturb a jury's evaluation of a witness's credibility and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." *Raedle*, 670 F.3d at 418 (2d Cir. 2012) (citation and internal quotation marks omitted).

3

## IV. DISCUSSION

Plaintiffs argue that the jury's finding that Defendant did not "breach[] its duty to provide John Gyllenhammer with an adequate safety device" was "against the weight of the evidence," (Dkt. No. 125-2, at 2–3), because: (i) Plaintiff John Gyllenhammer testified that "he could tell that he would not be able to reach and remove the thermostat from the stepladder" in an open position; (ii) safety expert Ernest Gailor testified that he confirmed, using "engineering principles and . . . mathematical calculations," that John Gyllenhammer could not have safely reached the thermostat from the stepladder in an open position, (*id.* at 3); and (iii) the testimony of John Coniglio, Defendant's expert safety witness, was "unreliable and cannot support the jury's verdict," (*id.* at 5).

Ample evidence supported the jury's determination that Defendant did not fail to provide Plaintiff with adequate safety equipment to remove and relocate the thermostat.[2] For example, multiple witnesses testified that Mr. Gyllenhammer could have accessed the thermostat—located on the wall five feet and six inches above the floor—using no safety equipment at all had he moved the desk or removed the attached hutch. Micah Champoux recalled that Mr. Gyllenhammer was using the stepladder in an open position when he fell, and that Mr. Gyllenhammer said that he fell because his foot or leg became caught on a rung while he was climbing down from the stepladder. Defendant's workplace safety expert, John Coniglio, testified that there were four ways Plaintiff could have safely accessed the thermostat by using the stepladder locked in the open position or by standing on the desk. Defendant presented to the jury photographs taken at the scene of Plaintiff's fall with the stepladder set up to demonstrate each possible method. There was abundant evidence supporting the jury's verdict.

---

[2] "In order to demonstrate a violation of [New York Labor Law § 240(1)], plaintiff must prove that he was not provided proper protection in the form of scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, or other devices." *Wojcik v. 42nd St. Dev. Project*, 386 F. Supp. 2d 442, 451 (S.D.N.Y. 2005).

Plaintiffs' assertion that Mr. Coniglio's opinions regarding the adequacy of the stepladder were unreliable because they were "not the result of the application of reliable principles," "methods," or "generally accepted industry standards," (Dkt. No. 125-2, at 3), is without merit. In determining whether expert testimony is sufficiently reliable under Rule 702 of the Federal Rules of Evidence, a "district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony 'is the product of reliable principles and methods'; and (3) that 'the witness has applied the principles and methods reliably to the facts of the case.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting Fed. R. Evid. 702). "In short, the district court must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire v. Carmichael*, 526 U.S. 137, 152 (1999)).

Mr. Coniglio testified that he performed an on-site inspection of the location of Mr. Gyllenhammer's fall. He testified that, using the same-size stepladder locked and open, he was able to safely reach the former location of the thermostat with the ladder in various positions. He testified that he was able to safely reach the thermostat by standing on the desk. He produced photographs demonstrating each of these methods that were, in Mr. Coniglio's expert opinion, safe. Based on his inspection, experience, background, and ability to reach the thermostat while using the stepladder in the open position under the same conditions, Mr. Coniglio concluded, *inter alia*, that the stepladder was adequate safety equipment with which to perform the work Mr. Gyllenhammer was attempting when he fell. Without citing to the record, Plaintiffs assert that these methodologies were unreliable on the basis that "it became apparent" during cross-

examination that Mr. Coniglio was unable to immediately identify OSHA regulations, New York State regulations, or other "generally accepted industry standards" in support of some of his opinions. (Dkt. No. 125-2, at 3–4). However, "[w]here an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may 'go to the weight, not the admissibility' of the expert's testimony." *Amorgianos*, 303 F.3d at 267 (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Because of the thorough methodology described above, the flaws in Mr. Coniglio's testimony Plaintiffs now allege, even if accepted as true, do not render his opinions unreliable. Accordingly, Plaintiffs' arguments are insufficient to justify disturbing the jury's assessment of Mr. Coniglio's credibility.[3]

Even if the Court were to disregard Mr. Coniglio's testimony as Plaintiffs suggest, "the balance of the evidence" would not "lead[] to the conclusion that the stepladder was inadequate." (Dkt. No. 125-2, at 4). Plaintiffs presume that the jury *must* have credited Plaintiffs' version of events, while overlooking the possibility that the jury simply did not find Plaintiffs' witnesses or evidence credible. For example, Mr. Gyllenhammer's cross-examination revealed apparent inconsistencies in his testimony. He testified that the thermostat was only accessible using

---

[3] Plaintiffs cite to three cases in support of their motion, none of which support their contention that supposed deficiencies in Mr. Coniglio's testimony warrant a new trial. *See Cataldo v. Brunswick Corp.*, 68 F.R.D. 600 (S.D.N.Y. 1975) (granting defendant's motion for new trial where plaintiff's expert's testimony "was so replete with error, mis-assumptions of underlying fact, corrections, erroneous explanations, inconsistent positions and blatant flaws of recollection, if not worse, going to general credibility as to make the verdict in this case, based on his testimony . . . a miscarriage of justice"); *Byce v. Am. Honda Motor Co.*, 59 F.R.D. 63 (W.D. Pa. 1971) (granting plaintiff's motion for new trial in the interest of justice where demonstration of operation of motorbike carburetor was required to resolve conflicting expert testimony as to the cause of motorbike's rapid acceleration); *Brown by Brown v. Syntex Labs., Inc.*, 755 F.2d 668, 670 (8th Cir. 1985) (affirming grant of defendant's motion for new trial where plaintiff's medical expert's testimony that chloride-deficient baby formula caused plaintiff's speech and memory disorder was unsupported by research and undermined by absence of evidence that plaintiff had a chloride deficiency).

stepladder in the closed position, but he acknowledged that did not attempt to reach the thermostat using the stepladder in the open position. He testified that he fell from the third rung of the ladder, but subsequently acknowledged that standing on the third rung would have positioned him too high to reach the thermostat. Furthermore, portions of Mr. Gyllenhammer's testimony were contradicted by Defendants' witnesses and evidence. For example, Mr. Gyllenhammer testified that he and Mr. Champoux tried to access the thermostat by moving the desk; Mr. Champoux did not recall undertaking any efforts to move the desk. Mr. Gyllenhammer testified that he fell because the stepladder shifted; Mr. Champoux testified that Mr. Gyllenhammer said he fell because his foot or leg became caught on a rung while he was descending the ladder. Finally, Mr. Gyllenhammer's prior testimony that he had never sought treatment for knee pain before his fall was contradicted by medical records indicating that he had reported "sharp" knee pain in the past. The jury may have relied upon any or all of these inconsistencies in concluding that Mr. Gyllenhammer's testimony was not credible; nothing in the record justifies disturbing such a conclusion.[4]

Ultimately, it is clear that the jury credited Defendant's version of events while discrediting Plaintiffs'—the Court will not disturb this finding. Considering the ample evidence supporting the jury's conclusion that Defendant did not fail to provide Mr. Gyllenhammer with adequate safety equipment to perform the work at issue in this case, the Court cannot conclude that the verdict was against the weight of the evidence or seriously erroneous. Nor have Plaintiffs shown that the verdict is a miscarriage of justice. Accordingly, Plaintiffs' motion for a new trial must be denied.

---

[4] Plaintiffs also fail to consider the possibility that the jury did not find the testimony of Mr. Gailor, Plaintiffs' workplace safety expert, to be credible. Mr. Gailor testified that he did not visit the site of Mr. Gyllenhammer's fall, but instead relied upon measurements of the office to conclude through engineering principles and mathematical calculations that the stepladder was inadequate for Mr. Gyllenhammer to safely relocate the thermostat.

7

Finally, Defendant has requested expenses and attorney's fees incurred in responding to Plaintiffs' motion under 28 U.S.C. § 1927. The Court cannot conclude that Plaintiffs' counsel's "actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). Accordingly, Defendant's request is denied. To the extent Defendant has incurred costs compensable under Fed. R. Civ. P. 54(d)(1) in connection with responding to this motion, Defendant may file an amended motion for bill of costs.

## V. CONCLUSION

For these reasons it is

**ORDERED** Plaintiffs' motion for a new trial (Dkt. No. 125) is **DENIED**; and it is further

**ORDERED** that Defendant's request under 28 U.S.C. § 1927 for expenses and attorney's fees incurred in responding to this motion (Dkt. No. 127) is **DENIED**; and it is further

**ORDERED** that any amended motion for a bill of costs must be filed by October 30, 2018, and any memorandum in opposition to any costs must be filed by November 20, 2018.

**IT IS SO ORDERED.**

Dated: October 16, 2018
Syracuse, New York

Brenda K. Sannes
U.S. District Judge